```
                    United States Court of Appeals
                        FOR THE EIGHTH CIRCUIT
                          _____

                          No.  97-2857
                          _____
```

United States of America,          *
                                   *
        Plaintiff - Appellee,      *
                                   *  Appeal from the United States
   v.                              *  District Court for the
                                   *  District of Nebraska.
Rogelio Galvan-Muro,               *
                                   *
        Defendant - Appellant.     *
                                   *

```
                          _____
```

Submitted: November 18, 1997
                                Filed: April 15, 1998
```
                          _____
```

Before BEAM, HEANEY, and JOHN R. GIBSON, Circuit Judges.
```
                          _____
```

JOHN R. GIBSON, Circuit Judge.

Rogelio Galvan-Muro appeals his conviction of possessing with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) (1994). Galvan argues that the district court[1] erred in failing to suppress the cocaine seized during a search of his car. He contends there was not reasonable suspicion to

---

[1]The Honorable Lyle E. Strom, United States Senior District Judge for the District of Nebraska.

justify his detention, and that he did not voluntarily consent to the search of his car. We affirm the conviction.

On January 31, 1996, Nebraska State Trooper Goltz pulled over Galvan for speeding. Goltz recorded the stop on his in-car video camera system, which records whatever is in front of the cruiser. Goltz asked Galvan for his license and car registration. Galvan told Goltz that he was heading to Chicago for a business meeting. Goltz returned to his patrol car where he asked the dispatcher to run several computer checks on Galvan.

After about ten to fifteen minutes, Goltz had the information from two of his computer checks. He learned that Galvan had a valid driver's license, and that he had been arrested on a narcotics charge and a vehicle tampering charge. Goltz issued a written warning for speeding.

Goltz returned to the car and handed Galvan his warning. He returned Galvan's license and car registration and asked Galvan if he had ever been arrested. Galvan admitted that he had been arrested for being in a stolen vehicle. Goltz thought it unusual that Galvan admitted his arrest for one felony but not to the drug felony. Goltz explained to Galvan that Interstate 80 is often used to transport drugs. He asked Galvan whether he had any drugs or weapons in the car. Galvan replied "no," and Goltz asked: "You don't have any problem if I search your car?" Galvan's faint response cannot be heard on the videotape, but Goltz testified that Galvan responded "yes," shaking his head indicating to Goltz that he could search his car. Goltz then said: "You understand I can search your car?" Galvan nodded his head, said "yes," and asked Goltz if he wanted him to open the trunk. Goltz did not use a consent to search or waiver of rights form, relying instead on the video and audio recording of the consent.

Because of the extreme cold, Goltz told Galvan he could sit in his patrol car. Goltz took the police dog out of the back of his car, and walked the dog around

Galvan's car. The dog did not alert. Goltz searched the inside of the car, the trunk of the car, and the luggage inside the rear of the car. The initial search lasted about five minutes. At that point, a second police officer arrived on the scene to tell Goltz that his radio microphone was not working. Goltz inadvertently turned off the audio for his videotape when he adjusted the radio switch. From this point on, there is no sound to go along with the videotape.

Goltz returned to his patrol car to call the Nebraska State Patrol dispatch. They told him that one of the computer searches showed that United States Customs was investigating Galvan for false modifications of vehicles through his limousine business, specifically, building false compartments.

Two other officers arrived. After being told the above information, one of the officers opened the trunk of the vehicle and observed that one of the support beams was a different color than the rest of the vehicle and that the trunk contained "bondo," a compound used for vehicle modifications. The officers then located a false compartment in the trunk where they found approximately twenty kilograms of cocaine.

Galvan moved to suppress all evidence seized as a result of the search of his car, arguing that his consent was not knowing and voluntary. The magistrate judge denied the motion, and the district court adopted the magistrate judge's report and recommendation. Galvan then entered a conditional plea of guilty and appealed the denial of his motion to suppress evidence.

Galvan concedes that Goltz had probable cause to stop him for a speeding violation. He argues, however, that after obtaining Galvan's identification, asking about his trip, and running the computer checks, the traffic stop should have concluded. He contends that Goltz's further questioning converted the otherwise legitimate stop into an investigatory stop, and that there was not reasonable suspicion to justify such a detention under Terry v. Ohio, 392 U.S. 1 (1968).

The district court concluded that Galvan's consent occurred during a "consensual encounter," and that after Goltz returned to Galvan his license and registration there was no seizure as a reasonable person would feel free to leave.

Galvan argues that this case is indistinguishable from United States v. Ramos, 42 F.3d 1160 (8th Cir. 1994), cert. denied, 514 U.S. 1134 (1995). In that case, a police officer stopped two brothers because the passenger was not wearing a seat belt. Id. at 1161. Neither the computer check nor the driver's answers to the officer's question raised suspicion. Id. Nevertheless, the officer kept the two brothers separated and asked them additional questions. Id. at 1162. We held that although the initial stop was legitimate, the scope of the officer's additional questioning and delay was not reasonably related to the circumstances justifying the stop. Id. at 1164. The court decided that the additional questions and delay escalated the stop into a Terry stop requiring reasonable suspicion. Id.

This case is distinguishable from Ramos. First, when the officer in Ramos asked for permission to search the vehicle, the brothers were separated. Even though the officer had returned the driver's license, the separation of the driver and passenger prevented the driver from terminating the encounter such that a reasonable person would not feel free to leave. Id. at 1162-64. Circumstances indicative of a seizure

-4-

may include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" United States v. White, 81 F.3d 775, 779 (8th Cir.) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.)), cert. denied, 117 S. Ct. 518 (1996).  The ultimate determination of whether a seizure occurred is a question of law which we consider de novo.  See id.  The underlying facts used to decide whether a seizure occurred are reviewed for clear error. See United States v. McKines, 933 F.2d 1412, 1426 (8th Cir.) (en banc), cert. denied, 502 U.S. 985 (1991).

The district court adopted the report of the magistrate judge, who found that the exchange between Galvan and Goltz was cooperative and conversational, that Goltz displayed no weapon, and that at the time Goltz asked to search the car Galvan had everything he needed to proceed on his way.

After carefully reviewing the record, including the videotape of the encounter, we are persuaded that these findings are not clearly erroneous. We should add that although videotapes of an encounter taken by cameras in the police or patrol cars are a new development in law enforcement, and a new development in our appellate review, the findings of fact from such items of evidence fall within the province of the district court.  As with any other evidentiary issue, our review is on the record before us and we may not substitute our factual findings for those of the trial judge.  We can only observe that the videotaped encounters present a graphic demonstration from which we can reach our conclusion as to whether the district court made findings of fact that are clearly erroneous.  Galvan had everything he needed to lawfully proceed on his journey, so that a reasonable person would feel free to leave. Thus, Goltz's request to search came during a consensual encounter and was permissible without reasonable suspicion.  See White, 81 F.3d at 779.

The search of Galvan's car did not arise from an unreasonable detention.

## II.

Galvan also argues that he did not voluntarily consent to the search of his car.[2]

Galvan's consent was voluntary if it was the product of an essentially free and unconstrained choice, rather than the product of duress or coercion, express or implied. See United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990) (citing Schneckloth v. Bustamonte, 412 U.S. at 218, 225, 227 (U.S. 1973) (quotations omitted)). This determination depends upon the totality of the circumstances, including "both the characteristics of the accused and the details of the interrogation." Id. The government bears the burden of proving voluntary consent by a preponderance of evidence. See United States v. Barahona, 990 F.2d 412, 417 (8th Cir. 1993).

Citing the factors set forth in Chaidez to determine whether consent is voluntary, see 906 F.2d at 381, Galvan argues that he did not voluntarily choose to allow Goltz to search his vehicle. He contends that his acquiescence to the search was the product of coercion, explaining that he had a limited understanding of English and that Goltz's "requests" to search the car were actually demands.

The district court found that Galvan had no difficulty understanding Goltz and that Galvan voluntarily consented to the search of his car. We review the district

---

[2]The Supreme Court recently granted certiorari to consider the validity of a search of a vehicle incident to the issuance of a traffic citation. See Iowa v. Knowles, 569 N.W.2d 601 (Iowa 1997), cert. granted, 66 USLW 3620 (U.S. Mar. 23, 1998) (No. 97-7597). The Supreme Court's decision in this case will not impact our analysis here. The Court is considering the validity of a search authorized by a state statute, not the validity of a consensual search.

court's determination of whether a voluntary consent to a search was given under the clearly erroneous standard.  See Barahona, 990 F.2d at 417.

The district court findings of consent are supported by the record. Goltz testified that he had no difficulty understanding Galvan and perceived no difficulty in Galvan understanding him.  Our review of the videotape confirms that Galvan spoke English.  He answered Goltz's questions quickly and with some elaboration.  He appeared to understand English.  Galvan's actions and demeanor observed on the video are consistent with a finding of voluntary consent.  He offered to open the trunk of the car.  He appeared quite cooperative and did not object to the search.  See White, 81 F.3d at 780.

The district court did not clearly err in concluding that Galvan voluntarily consented to the search of his car.

We affirm the conviction.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.