COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Frank
Argued at Salem, Virginia


VINCENT DICKERSON

                                             OPINION BY
v.    Record No. 1120-00-3          JUDGE ROSEMARIE ANNUNZIATA
                                         MARCH 27, 2001
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                      B.A. Davis, III, Judge Designate

               Philip G. Gardner (Gardner, Gardner, Barrow &
               Sharpe, on brief), for appellant.

               Marla Graff Decker, Assistant Attorney
               General (Mark L. Earley, Attorney General, on
               brief), for appellee.


     Appellant, Vincent Dickerson, appeals his conviction for

possession of cocaine with the intent to distribute.  He contends

the trial court erroneously denied his motion to suppress

evidence that was obtained in violation of his Fourth Amendment

rights.  For the following reasons, we affirm.

                             BACKGROUND

     On August 20, 1999, a Danville Life Saving Crew truck was

headed west on Highway 58 between Danville and Martinsville when

it encountered a person in a black Ford Escort who would not

yield the right-of-way to the ambulance.  Deputy Parker, a law

enforcement official with the Pittsylvania Sheriff's Department,

was on routine uniformed patrol when he received information from

his dispatcher reporting the incident.  Deputy Parker also

received a description of the offending vehicle and its license

plate number.  When Parker saw the ambulance coming in his direction, he pulled his police car onto the highway from a turnaround where he was positioned.  He passed the ambulance and got behind the vehicle that matched the description given to him by the dispatcher.  The vehicle was in the left lane traveling at a high rate of speed in front of the ambulance.  By using his speedometer, Parker determined the vehicle was traveling at about sixty-five miles per hour in a posted fifty-five mile-per-hour zone.

Parker activated his emergency lights and siren to signal the driver to stop.  When the driver complied, Parker approached the car and found Dickerson in the driver's seat.  No other occupants were in the car.  Parker detected the odor of alcohol on Dickerson's person and asked him if he had been drinking.  Dickerson responded that he had consumed one beer.  He admitted to Parker that he was "going sixty-five miles an hour."

Dickerson exited the vehicle at Parker's request and agreed to perform field sobriety tests, all of which he satisfactorily completed.  As a result, Parker decided not to arrest Dickerson for driving under the influence of alcohol and informed Dickerson of that decision.  He added, however, that Dickerson might get a summons from the ambulance driver for failing to

yield to an emergency vehicle.  Parker then told Dickerson he was "free to go."

As Dickerson was getting back into his vehicle, Parker asked him if the car contained anything that Parker "should know about," such as "dope, marijuana, roaches in the ashtray, something, anything like that."  When Dickerson responded in the negative, Parker asked him if he smoked marijuana.  Dickerson admitted he did, qualifying his answer by stating, "not while he was driving."  Dickerson then added that "there [were] some roaches in the ashtray."

After Dickerson's admission, Parker asked if he could look inside Dickerson's car.  Although Dickerson said, "no," to the request, Dickerson reached into the vehicle, pulled out the ashtray, and handed it to the deputy.  Parker saw "numerous hand rolled cigarette roaches" in the ashtray, and Dickerson admitted they were marijuana cigarettes.

Parker again asked Dickerson for permission to look inside the vehicle and Dickerson again responded, "no."  However, Parker began to search the vehicle and found inside the passenger compartment three plastic bags of an "off-white rock substance" and one plastic box containing a scale.  Parker asked another deputy, Deputy Morrison, who had earlier arrived on the scene as back-up, to unlock the truck and search it.  Morrison found in the trunk seven small plastic bags of an off-white rock-like substance, one plastic bag containing a white powder substance, and another set of scales.  Parker placed Dickerson under arrest.

Dickerson filed a motion to suppress the evidence, which the trial court denied. He subsequently pled guilty to the offense, reserving the right to appeal the trial court's ruling on the suppression motion.

### ANALYSIS

Dickerson contends the encounter with the officer following the traffic stop was not consensual and that because the seizure was not based on a reasonable, articulable suspicion of criminal activity on his part, he was seized in violation of his Fourth Amendment rights. The Commonwealth contends the encounter was consensual and that during this consensual encounter, the officer developed probable cause to arrest Dickerson and probable cause to search his vehicle. We agree with the Commonwealth and affirm the trial court's ruling on the suppression motion.

When reviewing on appeal a trial court's ruling denying a motion to suppress evidence, we consider the evidence and all reasonable inferences which may be drawn from the evidence in the light most favorable to the Commonwealth. Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994). The burden on appeal to show "that the denial of [the] motion to suppress constitute[d] reversible error" rests with the defendant. Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993).

We review determinations of reasonable suspicion and probable cause de novo on appeal. Ornelas v. United States, 517 U.S. 690, 699 (1996); McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997). "Similarly, the question whether a person has been seized in violation of the Fourth

Amendment is reviewed de novo on appeal."  Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000). Although we apply de novo our own legal analysis of whether a seizure occurred, we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

The record shows that Deputy Parker lawfully stopped Dickerson for a traffic violation.  Dickerson concedes the initial stop was lawful.  Whren v. United States, 517 U.S. 806, 810 (1996) (police may stop a vehicle where they have probable cause to believe a traffic violation has occurred).  However, when an officer makes a lawful traffic stop, the scope of the temporary detention may not exceed the purpose of the stop. Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification.").  Therefore, absent reasonable, articulable suspicion, Deputy Parker could not lawfully extend the initial stop and continue to detain Dickerson in order to ask him questions concerning his possession and use of drugs.  The Commonwealth does not contend that Deputy Parker had reasonable suspicion to detain Dickerson when he began to question him concerning his use and possession of drugs; rather, it contends Deputy Parker and Dickerson were engaged in a consensual encounter at the time the questioning occurred.

Dickerson argues that once the traffic stop was completed, Parker's questions regarding the presence of drugs in the car

constituted an illegal seizure.  We disagree and find that the encounter was consensual at the time of the questioning and that probable cause to arrest Dickerson and search his vehicle developed as a result of the consensual encounter that followed the initial traffic stop.

A voluntary police-citizen encounter becomes a seizure for Fourth Amendment purposes "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  Florida v. Bostick, 501 U.S. 429, 434 (1991).  "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual, and no reasonable suspicion is required."  Id. (citation omitted).  "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual . . . and request consent to search . . . as long as the police do not convey a message that compliance with their requests is required."  Id. at 434-35, 437. In determining whether the encounter was consensual, we must "consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter."  Id. at 439.

In determining whether a reasonable person would feel he or she was not free to terminate an encounter with the police, several jurisdictions, including Virginia, have utilized a set of factors first articulated by Justice Stewart in his opinion in United States v. Mendenhall, 446 U.S. 544 (1980) (opinion of

Stewart, J.).  See United States v. Galvan-Muro, 141 F.3d 904, 906 (8th Cir. 1998); United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991); Parker v. Commonwealth, 255 Va. 96, 101-02, 496 S.E.2d 47, 50 (1998); Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 647, 648 (1992).  Those factors include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554 (opinion of Stewart, J.).

The record shows that after the lawful traffic stop was completed, Dickerson was told he was free to leave before any of the challenged questioning ensued.  Mere questioning alone, after Dickerson was told he was free to go, is not sufficient to constitute restraint for Fourth Amendment purposes.  See United States v. Sullivan, 138 F.3d 126 (4th Cir. 1997); United States v. Lattimore, 87 F.3d 647 (4th Cir. 1996); United States v. Thompson, 106 F.3d 794 (7th Cir. 1997); Galvan-Muro, 141 F.3d 904; United States v. White, 81 F.3d 775 (8th Cir. 1996); United States v. Anderson, 114 F.3d 1059 (10th Cir. 1997); United States v. Elliott, 107 F.3d 810 (10th Cir. 1997); United States v. Hernandez, 93 F.3d 1493 (10th Cir. 1996); United States v. Sandoval, 29 F.3d 537 (10th Cir. 1994); United States v. McKneely, 6 F.3d 1447 (10th Cir. 1993); Turner, 928 F.2d 956; United States v. Werking, 915 F.2d 1404 (10th Cir. 1990).

In this case, after Deputy Parker told Dickerson he was free to leave, Dickerson returned to his car and began to get back into the vehicle, indicating that Dickerson believed he was free

to leave at that point. See Hernandez, 93 F.3d at 1499. Nothing occurred after that point that would make a reasonable person feel he or she was not still free to leave. Deputies Parker and Morrison did not by means of force or show of authority restrain Dickerson or indicate that he was required to comply with their requests. While two officers were on the scene, only one was interacting with Dickerson. See White, 81 F.3d at 779 (other officers "were little more than passive observers prior to commencement of the search"). Neither officer acted in a threatening manner either by their language or the tone of voice used. See Galvan-Muro, 141 F.3d at 906 (exchange between officer and defendant was "cooperative and conversational"); White, 81 F.3d at 779 ("tone of the entire exchange was cooperative"). Neither officer physically touched Dickerson, and neither displayed a weapon. Galvan-Muro, 141 F.3d at 906; White, 81 F.3d at 779.[1] Finally, the evidence establishes that neither officer

---

[1] Contrary to Dickerson's assertions on appeal, the mere presence of a holstered weapon is not sufficient to convert a consensual encounter into an illegal seizure. See Bostick, 501 U.S. at 432, 434, 437 (in holding that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions," the Court noted that although the officer in that case was carrying a holstered weapon, the officer did not point the gun at the defendant or use the gun in a threatening manner).

In addition, Dickerson's reliance on Parker, 255 Va. 96, 496 S.E.2d 47, for the proposition that the fact that an officer is wearing a uniform and a badge, alone, constitutes a show of authority, is misplaced. In Parker, the Virginia Supreme Court, in finding the defendant had been seized, specifically relied on the fact that after the defendant attempted to evade the police, the officer "drove his police cruiser forty feet off of the street and onto private property and stopped his police cruiser at the location where the defendant was standing," and not on the fact that the officer, like most patrol officers, was wearing a badge and a uniform. Id. at 103, 496 S.E.2d at 51.

blocked nor restricted Dickerson's movement in any way. Dickerson was told he was free to leave and was allowed to return to his vehicle, which had the keys in the ignition.  Therefore, because the police neither utilized force nor made a show of authority which would have led a reasonable person to believe he or she was not free

to go, the encounter between Dickerson and the police was consensual.

This case may be distinguished from Reittinger, 260 Va. 232, 532 S.E.2d 25, where the Virginia Supreme Court found that the defendant had been unlawfully seized following a traffic stop. In Reittinger, the police pulled the defendant over for operating a vehicle with only one headlight. One officer approached the vehicle and stood next to the driver's window, and a second officer stood next to the front passenger side window. The first officer asked the defendant for his license and registration. After the officer gave the defendant a verbal warning for the headlight offense, the officer told the defendant he was "free to go." Immediately thereafter, without moving from the driver's side window, the officer asked the defendant if he had any illegal drugs or weapons in the car. The defendant said, "no," and the officer asked permission to search the vehicle. The defendant did not respond but, rather, consulted with the passengers in the vehicle. The officer asked to search the vehicle three times without response from the defendant before the defendant exited the vehicle. When he exited the vehicle, the officer saw what looked like a weapon in the defendant's pocket and ordered him to remove it.

The Supreme Court held that the defendant had been unlawfully seized. Id. at 237, 532 S.E.2d at 28. The Court found that, "[a]lthough Deputy Bolen had told Reittinger that he was free to go, we think that the events that transpired immediately thereafter would suggest to a reasonable person that just the opposite was the case." Id. In deciding Reittinger

remained under the restraint of the traffic stop, the Court focused on the fact that the officers still flanked the vehicle even after the defendant was told he was free to go and on the repeated requests by the officer to search the vehicle. Id. at 236-37, 532 S.E.2d at 27; see also Hernandez, 93 F.3d at 1499 ("'[A]ccusatory, persistent, and intrusive' questioning may turn an otherwise voluntary encounter into a coercive one if it conveys the message that compliance is required."). In the case before us, there was a clear and definite break in the chain of events, separating the stop from the subsequent consensual encounter. Dickerson was told he was free to go and was allowed to return to his vehicle. Deputy Parker's inquiry began as Dickerson was entering his car, and the inquiry, unlike that in Reittinger, did not, by its nature, implicate restraint or the need to restrain. Parker's questions were limited to gathering information that Dickerson was free to decline giving. Furthermore, Parker was not persistent in seeking information from Dickerson in the face of either resistance on his part or under circumstances where his willingness to cooperate was not made manifest. Rather, Dickerson responded to Parker's questions regarding his use and possession of marijuana without further prodding by the officers.

In the course of the consensual encounter, Parker obtained information that gave rise to probable cause to arrest Dickerson for a criminal offense and to search his car incident to that arrest. In response to questions asked by Parker, Dickerson admitted he smoked marijuana and had some "roaches" in the ashtray of the car. This evidence constitutes probable cause for

arrest.  Taylor v. Commonwealth, 222 Va. 816, 821, 284 S.E.2d 833, 836 (1981) ("[P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed."); see also Parker, 255 Va. at 105, 496 S.E.2d at 53; Buck v. Commonwealth, 20 Va. App. 298, 304, 456 S.E.2d 534, 536-37 (1995) ("If an officer has reason to believe that a person is committing a felony in his presence by possessing contraband or a controlled substance, the officer has probable cause to arrest the individual without a warrant."). The search of the vehicle conducted incident to that arrest was proper.  New York v. Belton, 453 U.S. 454, 460 (1981) (police may search passenger compartment of vehicle when they have made lawful arrest of occupant); Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) (search may proceed formal arrest so long as police have probable cause to arrest at time of search).  Furthermore, although Deputy Parker did not immediately arrest Dickerson and continued to ask for Dickerson's consent to search the vehicle, the officer's subjective beliefs are irrelevant for purposes of determining whether the officer actually had probable cause to arrest.  Poindexter v. Commonwealth, 16 Va. App. 730, 734, 432 S.E.2d 527, 529 (1993) (where officer has probable cause to arrest suspect prior to conducting search, "officer's subjective motivations are not dispositive"); Limonja v. Commonwealth, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 480 (1989) ("Police actions are to be tested 'under a standard of objective reasonableness without regard to the underlying intent or motivation of the

officers involved.'" (quoting <u>Scott v. United States</u>, 436 U.S. 128, 138 (1978))).

Finally, the search of the vehicle, including the trunk, was proper under the automobile exception to the warrant requirement. <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940 (1996) (search of vehicle proper when there is probable cause to believe it contains contraband). Once the officers found drugs in the passenger compartment, they had probable cause to extend their search to the trunk of Dickerson's vehicle.

Because we find the encounter in this case was consensual and that the officers had probable cause to arrest Dickerson and to search his vehicle, we affirm the trial court's ruling denying Dickerson's motion to suppress.

<u>Affirmed</u>.