# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Daniel Lamont Wayne

September 21, 2001

Case No. (Criminal) 01-272

By Judge Edward L. Hogshire

This criminal action stems from the seizure of Daniel Lamont Wayne's person. Defendant filed a motion to suppress the evidence gleaned therefrom. For reasons articulated below, this Court grants Defendant's motion to suppress.

*Statement of Facts*

Between 8:00 and 8:30 p.m. on June 5, 2001, Officers Joe Hatter and Douglas Brooks stopped a young African-American male near Hardy Drive in the Charlottesville. Officer Brooks testified[1] that he did not recognize the defendant and articulated no suspicion of him beyond his mere presence in a reputed drug trafficking area. Both police officers exited their marked vehicle and approached the defendant who had moved off the street toward a private residence. Defendant and the officers engaged in what by all accounts was a casual, cooperative conversation revolving around Charlottesville's new police chief and his drug enforcement programs. Officer Brooks asked Defendant for his name, which he gave without protest and, upon request,

---

[1] Officer Hatter did not testify at the suppression motion hearing.

also gave a written identification. When no outstanding warrants were found for the defendant, his identification card was returned and he was informed that he was "free to leave."

Despite being told he could go, as Defendant was putting away his identification card, he was asked if he had "anything illegal" on him. Defendant responded in the negative. Officer Brooks then asked if he could nonetheless search Defendant and was promptly refused.

It was at this point that Officer Brooks for the first time noticed a large bulge, approximately six inches by ten inches, in Defendant's overall pants. In response to questions from the Court, Officer Brooks testified that he could not say the bulge resembled a weapon. His testimony was that he simply did not know what it contained. Defendant was then asked what was in his pocket. He at first said, "Nothing." The officer then said to him, "That is a huge bulge!", but there was no response. The officer then exclaimed, "There is something in there!" At that point, the defendant pulled out a pack of cigarettes. And after a brief period, and with a dejected look, the defendant then pulled out a bottle of what appeared to be liquor. Upon then being questioned about his age, which was twenty, he was arrested for under-age possession of alcohol and in a search incident to that arrest, cocaine was seized from his pants.

During this verbal encounter, Officer Brooks testified at length about the intense, direct eye contact which was maintained between himself and Defendant after the defendant had been told he was free to leave. Defendant's stare was broken only by a dejected look and admission that, "It's a bottle of liquor!" Defendant then handed his vodka bottle over to the police, admitting he was underage.

Defendant was indicted and charged with violating Virginia Code § 4.1-305 for underage possession of alcohol and § 18.2-248 for possession of a schedule II drug with intent to distribute. Defendant filed a motion to suppress on the ground that his seizure violated both the Fourth Amendment of the United States Constitution and Article I, § 8, of the Virginia Constitution.

## *Analysis*

The Commonwealth argues that any seizure or stop for Fourth Amendment purposes ended when the officer told the defendant that he was "free to go" and in no way inhibited his departure. The Commonwealth alleges, thereafter, a consensual encounter arose during which Defendant voluntarily relinquished his bottle of liquor and, being less than twenty-one years of age, the discovery of the cocaine occurred in a permissible search

incident to arrest. In retort, Defendant contends that the officer's behavior and questioning negated his statement that the defendant was "free to go" because a reasonable person would feel compelled to stay and respond to the police inquiries. Consequently, Defendant argues both the liquor and cocaine are fruit of a constitutional violation and should be suppressed under the exclusionary rule.

The analysis begins with the basic principal that citizens are protected from unreasonable searches and seizures by both the Fourth Amendment of the United States Constitution and Article I, § 8, of the Virginia Constitution. In order to safeguard citizens and curb police abuse, evidence obtained in violation of these rights, "is inadmissible in a criminal prosecution for a charged criminal violation pertaining to the seized evidence." *Anderson v. Commonwealth*, 20 Va. App. 361, 363 (1995). Based on this well-established prescript, if the alcohol and the cocaine were obtained through an unreasonable seizure, the motion should be granted and the evidence suppressed. *See*, Virginia Code § 19.2-60. Thus, the controversy focuses on whether the officers' actions constituted an unreasonable seizure for which relief should be granted.

A voluntary police-citizen encounter becomes a seizure for Fourth Amendment purposes "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual, and no reasonable suspicion is required." *Id.* (citation omitted). "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual … and request consent to search … as long as the police do not convey a message that compliance with their requests is required." *Bostick* at 434-35, 437.

As the Virginia Court of Appeals stated in *Dickerson v. Commonwealth*, 35 Va. App. 172, 178-79 (2001), "[I]n determining whether the encounter was consensual, we must 'consider all the circumstances surrounding it to determine whether the police would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter'." (quoting, *Bostick* at 439). To determine whether a reasonable person would feel he was not free to terminate an encounter with the police, Virginia utilizes a set of factors first articulated by Justice Stewart: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's

request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

It is important to note that the totality of the circumstances inquiry is not limited to those factors enunciated by Justice Stewart in *Mendenhall*. Not only have the federal courts broadened these elements, Virginia appellate courts have examined the coerciveness of a police-citizen encounter on a case-by-case basis.

As these legal precepts are applied to the instant case, the circumstances of the June 5, 2001, encounter evince factors which "communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick* at 439. Circumstantially, the defendant was alone, at night, in an area which is known for its high incident of crime and concomitantly enhanced police surveillance, and was approached by two armed police officers who had no articulable suspicion of him. Officer Brooks testified very credibly as to what transpired in his interaction with the defendant, describing the intense eye contact he shared with the defendant when asking repeatedly to disclose precisely what was causing the bulge in the defendant's pants pocket. A critically important factor here are Defendant's multiple refusals to acquiesce to the officer's persistent requests regarding the contents of his pockets: thrice inquired, thrice denied. None of these conditions alone communicated to a reasonable person that he was not free to decline the officer's requests or otherwise terminate the encounter. However, taken together, as a whole, under the totality of the circumstances, they communicated to a reasonable person that he was not free to decline the officer's requests or terminate the encounter.

The Court is guided by two recent, binding opinions. First, in comparison to the current fact scenario, the Virginia Supreme Court in *Reittinger v. Commonwealth*, 260 Va. 232, 236-37 (2000), reversed the Court of Appeal's decision to affirm a denial of a motion to suppress where the defendant had been subjected to a traffic stop in a rural area in the nighttime. Reittinger found himself in the presence of two armed deputies, one on each side of his van. One of the officers asked Reittinger to waive his Fourth Amendment right and consent to a search of the vehicle. When Reittinger did not respond, the law enforcement officer asked a second and then third time for consent to search. These requests for permission to search were made even though the deputy admitted he had no reasonable and articulable suspicion of criminal activity.

In significant ways, the case at bar is analogous but for the presence of a vehicle. The instant scenario actually presents a more coercive setting for the defendant. Reittinger was accompanied by two passengers to whom he

looked for guidance in responding to police requests whereas Defendant, at the time he was confronted by the police, was alone. The deputy's three-fold questioning may have been justified by Reittinger's lack of response, whereas the Defendant here was unequivocal in his refusal to allow a search. Reittinger's initial detention was the result of the officer observing Reittinger operating his van with only one headlight working, whereas in the present case, Defendant's initial detention cannot be justified by any suspicious or illegal behavior.

Second, this Court is also guided by the Virginia Court of Appeals' decision in *Dickerson v. Commonwealth*, which noted that, " '[a]ccusatory, persistent, and intrusive' questioning may turn an otherwise voluntary encounter into a coercive one if it conveys the message that compliance is required." 35 Va. App. 172, 181 (2001) (quoting, *United States v. Hernandez*, 93 F.3d 1493, 1499 (10th Cir. 1997)). The officer here candidly acknowledged that he could not say the bulge in Defendant's pants appeared to be a weapon. The persistent questioning conveyed to Defendant that he was required to reveal what was concealed in his trousers. All of these factors, when viewed in their totality, negated the seamless transition from a seizure to a voluntary encounter; the defendant did not, nor could a reasonable person, feel free to leave or otherwise terminate the encounter. Therefore, Defendant was subjected to an illegal seizure and during this seizure he was coerced into revealing the contents of his pants; thus, the motion to suppress should be granted.