COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Petty and Senior Judge Willis
Argued at Richmond, Virginia


RONALD WAYNE MALBROUGH, JR.

MEMORANDUM OPINION* BY
v.      Record No. 0609-05-2      JUDGE WILLIAM G. PETTY
OCTOBER 3, 2006

COMMOWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

D. Gregory Carr (Bowen, Champlin, Carr, Foreman & Rockecharlie,
on brief), for appellant.

Donald E. Jeffrey, III, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Appellant, Ronald Wayne Malbrough, Jr., entered a conditional plea of guilty to felony

possession of cocaine and possession of a firearm while in possession of cocaine. On appeal, he

contends the trial court erred by failing to suppress evidence obtained by law enforcement officers

during an unlawful detention. For the reasons that follow, we disagree with Malbrough and affirm

the judgment of the trial court.

I. BACKGROUND

"On appeal, we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4

Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). So viewed, the evidence establishes the following.

On the afternoon of February 25, 2004, at approximately 1:04 p.m., while parked at an

elementary school, Officer Fortier saw a light blue Cadillac driving past with a "rejected" inspection

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

sticker on the windshield. After observing the rejection sticker, Fortier ran the license plate on his mobile data computer and learned that the license plates were registered to a different vehicle. Based on these two apparent violations, Fortier activated his overhead blue lights and pulled the Cadillac over for a traffic stop. He does not recall if he used his siren.

When Fortier approached the Cadillac, he saw a pistol sitting on the center console. At about the same time, Malbrough, who was driving the car, informed Fortier that he had a pistol and passed it to him. Fortier secured the pistol in his patrol car and then returned to the Cadillac to obtain Malbrough's license and registration.

After getting Malbrough's information, Fortier reported the status of the traffic stop; while he did not recall requesting backup, two additional officers (Officer Flatt and Officer Holmes) arrived at the scene within moments. Officer Holmes, who approached without his lights activated, parked his patrol car in front of the Cadillac, and Officer Flatt parked behind Fortier's vehicle, leaving his blue lights on. Fortier testified that the Cadillac was not hemmed in and that there was about a car-length distance between the Cadillac and the police vehicle in front of it.

Officer Flatt, who was a firearms instructor, unloaded the pistol near Fortier's patrol car. While Officer Fortier was verifying Malbrough's identification information, Officer Holmes approached Malbrough and asked to speak with him concerning a shooting incident that had occurred in a nearby subdivision nearly two weeks earlier. A citizen had reported shots being fired from a large, older model Cadillac, occupied by black males and females. Malbrough denied any knowledge of or involvement in the incident.

Meanwhile, Fortier completed processing Malbrough's license and registration. Fortier had also gotten the passengers' identification and ran "wanted checks" on them. Neither passenger was wanted. After the information check on Malbrough came back clean as well, Fortier placed his

- 2 -

driver's license and registration on the driver's seat of the Cadillac.  At that time, Officer Holmes was still speaking with Malbrough.

Fortier asked the driver's side rear passenger to exit the vehicle, informed him that he was free to leave, and asked him for consent to search his person for drugs or weapons.  Fortier then searched the passenger but did not find any contraband.  Fortier repeated the same process with the front seat passenger and again did not find any contraband.

After searching the passengers, Fortier told Malbrough that his driver's license and registration were on the driver's seat of the Cadillac and that he was free to leave.  At that time, Officer Flatt still had Malbrough's pistol.  When Fortier told Malbrough he was free to leave, no one mentioned the pistol.  Fortier testified at the suppression hearing that he "had every intention of returning the firearm to him when he got back to his car.  I'm not in the habit of handing someone back a firearm while I'm talking to him."

After Fortier told Malbrough he was free to leave, he followed up by asking whether he had any weapons or drugs in his car.  Malbrough said no, and Fortier asked for Malbrough's consent to search his Cadillac.  At that time, Malbrough and his two passengers were standing outside the car. Malbrough consented to the vehicle search.  After searching the passenger compartment of the car, Fortier asked Malbrough if he had anything illegal on his person.  Malbrough said no, and began pulling items from his pockets.  Fortier testified, "I instructed him not to put his hands in his pockets, and I told him I would do the checking, and he told me it was all right."  Fortier then searched Malbrough, and found crack cocaine, powder cocaine, and marijuana in his front right pants pocket.  Fortier arrested Malbrough.

During the entire incident, the officers, who were in uniform, did not remove their firearms. Up until Malbrough's arrest, neither Malbrough nor the passengers were handcuffed.  Officer Fortier and Officer Flatt both kept the blue lights on their vehicles activated during the entire stop as

a traffic safety measure.  Approximately thirteen minutes elapsed from the initial stop to Malbrough's arrest.

## II. ANALYSIS

On appeal of the denial of a motion to suppress, it is appellant's burden to show that the denial constituted reversible error when the evidence is considered in the light most favorable to the Commonwealth.  See McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them."  Id. at 198, 487 S.E.2d at 261.  We review *de novo* the trial court's application of defined legal standards, such as whether a person has been seized in violation of the Fourth Amendment.  See Ornelas v. United States, 517 U.S. 690, 699 (1996); Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

In this case, Malbrough concedes that he was the subject of a lawful traffic stop.  However, when Officer Fortier informed Malbrough that his information was on the driver's seat of the Cadillac and that he was free to leave, the traffic stop ended.  Harris v. Commonwealth, 266 Va. 28, 33, 581 S.E.2d 206, 210 (2003).  In order for a detention to continue after a traffic stop has concluded, there must be some other lawful basis for the detention.  Id.  The Commonwealth argues that Fortier and Malbrough were engaged in a consensual encounter at the time the questioning and search took place.

Relying on the Supreme Court of Virginia's decision in Reittinger v. Commonwealth, 260 Va. 232, 532 S.E.2d 25 (2000), Malbrough contends that after the lawful traffic stop ended a non-consensual encounter began in circumstances in which a reasonable person would not feel free to leave due to the officers' show of force.  Thus, he argues, evidence obtained from him as a result of that seizure should be suppressed.

There is no "litmus test" for determining whether an encounter between police officers and a citizen is consensual or constitutes an illegal seizure. See Florida v. Royer, 460 U.S. 491, 506 (1983). Rather, we must determine, based on the totality of the circumstances of this case, whether a reasonable person would have felt free to leave or otherwise terminate this encounter. See United States v. Mendenhall, 446 U.S. 544, 558-59 (1980). "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." United States v. Drayton, 536 U.S. 194, 201 (2002). The "reasonable person" test is objective and "presumes an innocent person." Florida v. Bostick, 501 U.S. 429, 437-38 (1991). Such a consensual encounter can follow a legitimate detention. See United States v. Rusher, 966 F.2d 868, 877 (4th Cir. 1992). The consensual encounter becomes a seizure "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Bostick, 501 U.S. at 434.

In deciding whether the encounter was consensual, we must "consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that [he] was not free to decline the officers' requests or otherwise terminate the encounter." Id. at 439. Various factors have been identified as relevant in determining whether a seizure has occurred, including the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave. See Ohio v. Robinette, 519 U.S. 33, 36 (1996); Royer, 460 U.S. at 504; Mendenhall, 446 U.S. at 554. No one factor is dispositive under the totality of the circumstances analysis. See United States v. Weaver, 282 F.3d 302, 310 (4th Cir. 2002).

In this case, the officers' uncontradicted testimony at the suppression hearing established that there was no show of force. Malbrough was told that his license and registration were on the

driver's seat of his car and that he was free to leave. Although three officers were present, there is nothing in the record to suggest that they behaved in a threatening manner. Officer Flatt did not interact with Malbrough at all. He only secured Malbrough's pistol. Officer Holmes only spoke briefly to Malbrough regarding a separate incident while Officer Fortier checked Malbrough's identification. See Drayton, 536 U.S. at 254 (indicating second police officer's presence did not result in a seizure when he "did nothing to intimidate" the individuals from whom consent to search was sought).

While it is true that the officers were uniformed and armed during the incident, "[t]hat most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon." Id. (citing Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210, 212-13 (1984)). Thus, that fact "should have little weight in the analysis." Id.

Finally, Officers Fortier and Flatt did leave the blue lights flashing on their patrol cars, which were parked behind the Cadillac, throughout the entire encounter. In certain circumstances this could be considered a show of force, but we do not find it to be so here. The officers and Malbrough were stopped at the side of a road as it entered a subdivision. There was an elementary school nearby. In these circumstances, it was reasonable for the officers to keep the blue, flashing lights on as a safety precaution. "A reasonable person would know that while flashing lights may be used as a show of authority, they also serve other purposes, including warning oncoming motorists in such a situation to be careful." State v. Hanson 504 N.W.2d 219, 220 (Minn. 1993); cf. Harris, 266 Va. at 33, 581 S.E.2d at 210 (holding appellant was unlawfully detained when he was stopped at 4:00 a.m., was unable to produce a driver's license or vehicle registration, was not told that he could leave, and when officers did not deactiviate the flashing lights on their vehicles). Furthermore, there is no evidence in this case that Malbrough's vehicle was hemmed in by the

police vehicles; rather, there was a car length between his car and the police car parked in front of him.

We are also unpersuaded by Malbrough's argument that our Supreme Court's decision in Reittinger, 260 Va. at 232, 532 S.E.2d at 25, requires a reversal of the trial court's decision. In Reittinger, two deputy sheriffs stopped Reittinger in a rural area during the nighttime; both armed deputies, one on each side of the car, confronted Reittinger, and one deputy asked Reittinger three times for consent to search. Id. at 233, 532 S.E.2d at 26. Here, Malbrough was stopped during the day in a residential neighborhood; the officers did not surround his car, and there is no evidence that he was badgered in any way. Thus, the Reittinger case is inapposite.

Furthermore, we do not believe Reittenger stands for the proposition that a consensual encounter and search cannot follow a legitimate detention. See e.g., Robinette, 519 U.S. at 39 (refusing to adopt a per se rule prohibiting such encounters); see also Schneckloth, 412 U.S. at 227 (refusing to require police officers to warn potential subjects of a consent search that they have the right to refuse consent in order to preserve the consensual nature of the encounter). Rather, we believe Reittinger embodies the rule that "'accusatory, persistent, and intrusive' questioning may turn an otherwise voluntary encounter into a coercive one if it conveys the message that compliance is required." Dickerson v. Commonwealth, 35 Va. App. 172, 181, 543 S.E.2d 623, 628 (quoting United States v. Hernandez, 93 F.3d 1493, 1499 (10th Cir. 1996)), aff'd, 266 Va. 14, 581 S.E.2d 195 (2003).

Finally, Malbrough relies on our decision in Richmond v. Commonwealth, 22 Va. App. 257, 468 S.E.2d 708 (1996), to argue that he was not free to go because the officers still held his firearm, and had they allowed him to leave the scene while driving a vehicle with a rejection sticker and improper license plates, an on-going violation of the law would have resulted, possibly subjecting him to another traffic stop. Malbrough's reliance on Richmond is misplaced. In that case, we held

that the encounter between the officer and the appellant was not consensual because the officer held appellant's driver's license:  Richmond was not free to drive away under those circumstances because it would have been unlawful for him to operate his car without his driver's license.  See Richmond, 22 Va. App. at 261-62, 468 S.E.2d at 709-10 (citing Code § 46.2-104).  The cases holding that retention of personal property by the police is a factor in determining whether an encounter was consensual center on the idea of retaining property or documents that would tend to hinder one's physical ability to leave, such as a driver's license or an airplane ticket.  See 4 Wayne R. LaFave, Search & Seizure § 9.4 (a), n.81 (4th ed. 2004) (collecting cases).  Malbrough has not provided this Court, nor were we able to find, any authority indicating that any other type of property must be returned to an individual in order to preserve the consensual nature of an encounter.  Because the officers' retention of Malbrough's gun did not hinder his ability to leave or compel him to stay, this factor has little weight in our analysis.

Similarly, Malbrough's argument that he was constrained from leaving due to the traffic violations he was committing is without merit.  There are no facts in this record indicating that the officers caused Malbrough to operate a car that had not passed inspection or that had improper license plates.  While it is true that Malbrough would have possibly been subject to another traffic stop and would have been committing an ongoing traffic violation had he left, that situation is not a result of the actions of the officers in this case.  It is, instead, a result of Malbrough's decision to operate that vehicle.  Were we to accept Malbrough's argument, a police officer could never engage in a consensual encounter with an individual who was driving an improperly licensed or maintained automobile.

### III. CONCLUSION

Thus, we hold on these facts that the officers and Malbrough were engaged in a consensual encounter after the conclusion of the traffic stop, and we therefore hold that the trial court did not err in denying Malbrough's motion to suppress.

Affirmed.

Frank, J., dissenting.

I respectfully disagree with the majority view that appellant's consent to search his person was the product of a consensual encounter. Thus, I would reverse the decision of the trial court and remand for a new trial.

In this case, the issue is whether a lawful seizure, namely, the initial traffic stop, turned into a consensual encounter upon termination of the initial stop.

The record reflects, and appellant concedes, that the initial traffic stop was lawful. "However, when an officer makes a lawful traffic stop, the scope of the temporary detention may not exceed the purpose of the stop." Dickerson v. Commonwealth, 35 Va. App. 172, 177-78, 543 S.E.2d 623, 626 (2001) (citing Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion)), aff'd, 266 Va. 14, 581 S.E.2d 195 (2003).

"[T]he law has become well established that during a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation." United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004). "'When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.'" United States v. Rusher, 966 F.2d 868, 876 (4th Cir. 1992) (quoting United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir. 1988)). "Any further detention for questioning is beyond the scope of the Terry stop and therefore illegal[,]" Rusher, 966 F.2d at 876-77, unless the officer has a reasonable articulable suspicion that the driver is engaged in criminal activity or the driver consents to further questioning. Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003); see also Dickerson, 35 Va. App. at 178, 543 S.E.2d at 626 ("[A]bsent [additional] reasonable, articulable suspicion, [the officer] could not lawfully extend the initial stop and continue to detain [appellant] in order to ask him questions concerning his possession [of contraband].").

Upon stopping appellant for a rejection sticker and a license plate violation, Officer Fortier requested appellant's driver's license and registration. He ran a computer check on both items, and determined both to be valid. Instead of issuing a citation, Officer Fortier presumably decided not to pursue the traffic violations,[1] and returned appellant's driver's license and registration. Once this action was complete, the purpose of the traffic stop had been satisfied. Thus, the traffic stop ended before the point at which appellant consented to a search.

The Commonwealth does not contend that the officers had reasonable, articulable suspicion that appellant had committed or was committing a crime beyond that which served as the underlying justification for the initial stop. Thus, once the purposes of the initial traffic stop were satisfied, the traffic stop must have terminated and been followed by a consensual encounter in order for the officer to lawfully question appellant about his possession of contraband.

A consensual encounter can follow a legitimate detention. See Ohio v. Robinette, 519 U.S. 33, 39-40 (1996) (holding that a consensual encounter may begin after the legitimate detention has ended). "The decision whether the encounter was consensual must be made based on the totality of the circumstances." Harris, 266 Va. at 32, 581 S.E.2d at 209 (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)). "[N]o one factor is dispositive." United States v. Weaver, 282 F.3d 302, 310 (4th Cir. 2002).

> In applying the totality of the circumstances test, courts look to numerous factors including the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen. Most important, for our present purposes, numerous courts have noted that the retention of

---

[1] The record is silent as to whether Officer Fortier issued any warnings to appellant regarding the traffic violations, or whether he even mentioned the violations to appellant during the course of the stop.

> a citizen's identification or other personal property or effects is highly material under the totality of the circumstances analysis.

Id. (citations omitted).

The decision of whether a lawful seizure has turned into a consensual encounter hinges on whether a reasonable person would have known that the seizure had terminated and that they are now free to leave the scene or to disregard the officer's questions. Harris, 266 Va. at 33, 581 S.E.2d at 210. In such an instance, the onus is on the police officer to communicate clearly, whether by words or actions, that the period of seizure has ended. Id.; see also Florida v. Bostick, 501 U.S. 429, 439 (1991) (holding that, in determining whether a person is seized, courts must look to "whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter").

In the instant case, Officer Fortier did return appellant's driver's license and registration to him, and told him clearly that he was "free to leave" before he began questioning him about the presence of contraband on his person. However, these factors alone may not be enough, under the totality of circumstances, to communicate to appellant that he was in fact free to leave the scene of the traffic stop. See Harris, 266 Va. at 33, 581 S.E.2d at 210 (finding that, despite the fact that the officer had returned appellant's identification to him and had stopped questioning him about the traffic violation, the encounter did not become consensual after the traffic stop had ended where "[t]he officer did nothing to indicate to [appellant] that he was no longer subject to detention for a traffic violation" and where appellant "remained in the presence of two armed, uniformed police officers and two patrol vehicles with activated flashing lights"); see also United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991) (holding that even if the officer returns a driver's license and registration, the driver may still be considered to be "illegally detained" if the driver "'has an objective reason to believe that he was not free to end

- 12 -

his conversation with the law enforcement official and proceed on his way'" (quoting United States v. Werking, 915 F.2d 1404, 1408 (10th Cir. 1990))).

Examining the totality of the circumstances, I would hold that a reasonable person in appellant's position would not believe that he was free to leave. Three uniformed, armed police officers, with their guns holstered, were present throughout the traffic stop. Two marked police cars, with their blue emergency lights activated, were parked behind appellant's vehicle, and one marked police car, with its blue emergency lights activated, was parked in front of appellant's vehicle.[2] These lights remained on for the duration of the encounter with appellant. Officers removed the two passengers from the vehicle and performed searches on them during the initial traffic stop. One officer removed appellant from his car and questioned him about an unrelated shooting incident. Further, though Officer Fortier noted his reasons for the initial traffic stop during the hearing on the motion to suppress, the record is silent as to whether he ever discussed the purposes of the stop with appellant, or whether he informed appellant as to the resolution of the traffic offenses, namely that he would not be receiving a citation for those offenses, before telling appellant he was "free to leave."

Most significantly, at the time appellant was told that he was "free to leave," officers still held appellant's weapon, and did not inform him when, or if, it would be returned to him.[3] This circumstance is key to determining whether a reasonable person would believe they are free to leave the scene. See Weaver, 282 F.3d at 310 (noting that an officer's retention of appellant's

---

[2] The evidence shows that appellant's vehicle, while flanked in front and in back by police vehicles, was not hemmed in by the police vehicles and that appellant's vehicle could have left the scene without the need to move any of the police vehicles.

[3] The officer's subjective intent to return the gun is of no consequence unless this intent was communicated to appellant at the time he was told he was "free to leave." See Bond v. United States, 529 U.S. 334, 339 n.2 (2000) (holding that "the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment . . . the issue is not his state of mind, but the objective effect of his actions").

personal property is highly material to the totality of circumstances analysis); <u>Graham v. State</u>,

807 A.2d 75, 111 (Md. Ct. Spec. App. 2002) (finding that the officer's retention of appellant's

car keys "had the same restraining effect on the appellant's freedom to leave the scene" as would

the retention of appellant's driver's license); <u>State v. Armenta</u>, 948 P.2d 1280, 1285 (Wash.

1997) (holding that appellant was seized when police officer placed appellant's money in police

car for "safe keeping").[4]  A reasonable person would not expect to leave behind a valuable item

of personal property in order to be permitted to leave the scene of a traffic stop.[5]

Based on the totality of the circumstances, I would find that a reasonable person would

not feel free to leave the scene or to disregard the questions of officers.  Three marked police

cars, with their emergency lights activated, flanked appellant's vehicle in the front and the back.

Three uniformed, armed police officers, with their guns holstered, were present for the duration

of the stop.  One of those officers seized and retained appellant's gun, without communicating to

him when or if it would be returned to him.

Thus, I would hold that the initial lawful detention did not become a consensual

encounter.  Consequently, once the purposes of the initial traffic stop were satisfied, further

questioning of appellant regarding his possession of contraband constituted an illegal detention

in violation of the Fourth Amendment, as the officers had neither a warrant nor reasonable

suspicion to believe appellant was engaged in any criminal activity.

---

[4] It is inconsequential that appellant did not ask for his gun back.  The burden is not on appellant to ensure that the detention has ended; the officer has the burden to communicate clearly to appellant that he is no longer subject to detention.  <u>Harris</u>, 266 Va. at 33, 581 S.E.2d at 210.

[5] I can find no case law to support the proposition that a person should forfeit an item of personal property in order to secure their constitutional right to refuse consent to search.  The Fourth Amendment was crafted to jealously guard personal property rights against government intrusion; it does not demand that one relinquish that very property in order to invoke the Fourth Amendment's protections.

Appellant argues that the drug evidence recovered from his person, recovered after a violation of his Fourth Amendment rights, should be suppressed as the "fruit of the poisonous tree."

"[W]hen police exceed the permissible scope of a stop, 'consent to search may, but does not necessarily dissipate the taint of a [prior] fourth amendment violation.'" United States v. Boone, 245 F.3d 352, 363 (4th Cir. 2001) (quoting United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993)) (second alteration in original). Even if consent is voluntarily given, "voluntariness alone is not sufficient to overcome the taint arising from the unlawful seizure. Evidence obtained in the search of [appellant] is admissible only if it is not the product of an illegal seizure and is the result of an independent act of free will." Harris, 266 Va. at 34, 581 S.E.2d at 210 (relying on Royer, 460 U.S. at 501).

Where, as here, the consent and resulting search occurred during the period of illegal detention, without the presence of any intervening circumstances, the consent is not sufficient to overcome the taint of the Fourth Amendment violation.

> Here, the consent to search occurred within minutes of the illegal detention and under circumstances in which [appellant] was not free to leave or disregard the officer's inquiry. The consent, search, and evidence recovered were the products of an illegal detention. Furthermore, nothing on this record indicates that the evidence in issue was obtained by the police pursuant to an independent act of free will.

Harris, 266 Va. at 34, 581 S.E.2d at 210. "The Commonwealth has the burden to establish that [appellant's] consent to search was not 'obtained by exploitation of the illegal action.'" Id. (quoting Hart v. Commonwealth, 221 Va. 283, 288, 269 S.E.2d 806, 809 (1980)). Based on this record, I would conclude that the Commonwealth failed to meet that burden.

Because appellant's consent to search followed so closely on the heels of the illegal detention, I would hold that it was not sufficient to dissipate the taint of the Fourth Amendment

violation and was instead a product of that violation. Thus, I would reverse the trial court's decision on the motion to suppress and remand the case to the trial court for further proceedings if the Commonwealth be so advised.