Present:  All the Justices

VINCENT DICKERSON

v.  Record No. 021968     OPINION BY JUSTICE ELIZABETH B. LACY
                              June 6, 2003
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal we again consider whether, following the conclusion of a valid stop for a traffic violation, the continued encounter between a police officer and the driver of the vehicle was consensual or an illegal seizure in violation of the driver's Fourth Amendment rights.

On August 20, 1999, Pittsylvania Sheriff's Deputy B.K. Parker received a radio dispatch giving him the license plate number and description of a motor vehicle traveling westbound on Route 58.  The vehicle, driven by Vincent Dickerson, had failed to yield the right of way to a Danville Life Saving Crew truck.  Soon thereafter, Deputy Parker saw the vehicle traveling at a speed of 65 miles-per-hour in a 55 mile-per-hour zone.  He activated his vehicle's emergency lights and siren and initiated a traffic stop.  A second officer, Deputy Morrison, arrived on the scene and parked his patrol car behind Deputy Parker's vehicle.

As Deputy Parker approached Dickerson's vehicle, he noticed that Dickerson had "a slight odor of alcohol about his person."  Deputy Parker asked Dickerson to get out of the car

and perform some field sobriety tests.  The tests were conducted at the rear of Dickerson's vehicle.  After conducting these tests, Deputy Parker decided not to arrest Dickerson for any alcohol-related violations.  He told Dickerson he was free to go but that he might be subpoenaed later for the failure-to-yield traffic infraction.

Dickerson returned to his car, opened the driver's side door, and started to get back into the vehicle when Deputy Parker asked Dickerson "if there was anything in the car [he] should know about, dope, marijuana, roaches in the ashtray, something, anything like that."  Dickerson said "no."  Deputy Parker then asked Dickerson whether he smoked marijuana.  Dickerson replied that he did smoke marijuana but not while he was driving.  Dickerson also volunteered that there were "some roaches in the ashtray."

Deputy Parker asked if he could look in the car.  Dickerson said "no," but pulled out the ashtray from the vehicle's console and handed it to Deputy Parker.  The ashtray contained "numerous hand-rolled cigarette roaches" which Dickerson said were the remains of marijuana cigarettes.

Deputy Parker again asked Dickerson for permission to search the vehicle.  Although Dickerson again refused permission to search the vehicle, Deputy Parker told Dickerson to step away from the vehicle and began to search it.  Deputy

2

Parker found three plastic bags of cocaine and a plastic box containing scales under the driver's side floormat. At Deputy Parker's direction, Deputy Morrison retrieved the keys from the vehicle's ignition, opened the trunk, and found several additional plastic bags of cocaine and another set of scales. Deputy Parker placed Dickerson under arrest.

Dickerson was subsequently charged with violating Code § 18.2-248, possession of cocaine with intent to distribute. The Circuit Court of Pittsylvania County denied Dickerson's motion to suppress the evidence obtained in the search of his vehicle and convicted him of the crime charged. Dickerson was sentenced to six years' imprisonment, with three years suspended. The Court of Appeals affirmed Dickerson's conviction. See Dickerson v. Commonwealth, 35 Va. App. 172, 543 S.E.2d 623 (2001). This Court granted Dickerson's petition for appeal.[*]

Dickerson claims that, like the encounter in Reittinger v. Commonwealth, 260 Va. 232, 532 S.E.2d 25 (2000), Deputy Parker's questions regarding criminal activity were unrelated to the traffic offense and constituted a seizure in violation of his Fourth Amendment rights. Continuing, Dickerson asserts

---

[*] Dickerson's original appeal was dismissed because his attorney at the time failed to file an opening brief. Dickerson filed a petition for habeas corpus seeking a belated appeal, which was granted.

that because the evidence taken from his vehicle was obtained through an illegal seizure, it should have been suppressed.

The Fourth Amendment protects persons against unreasonable searches and seizures by the police, but the protections afforded by this Amendment are not implicated simply because a police officer approaches an individual and asks a few questions. Florida v. Bostick, 501 U.S. 429, 434 (1991). So long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and there is no violation of the Fourth Amendment. Id. (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)).

Dickerson argues that Deputy Parker's persistent questioning regarding criminal activity, after telling Dickerson that he was free to go, would lead a reasonable person to believe that Deputy Parker "had decided to continue the detention and that the officer had revoked his consent for the driver to leave." Dickerson further asserts that, during the questioning, he was "effectively cornered between the door and the passenger compartment of his car, blocked in by at least one uniformed police officer." We disagree.

The record in this case shows not only that a reasonable person would have felt free "to disregard the police and go about his business" but also that Dickerson believed that his

4

detention had ended, that he could leave, and that he was no longer required to remain with the officers or answer their questions. When Deputy Parker told Dickerson that he was free to go, Dickerson returned to his vehicle and started to get inside. This course of action is not consistent with a belief that one is under police detention or subject to police control.

The events of the original encounter resulting in Dickerson's initial detention and release were complete and the ensuing events constituted a new, and consensual, encounter. As the Court of Appeals noted, Deputy Parker's questions sought information and did not implicate restraint or the need to restrain. Dickerson, 35 Va. App. at 182, 543 S.E.2d at 628. Dickerson responded to Deputy Parker's questions by freely indicating that he had used marijuana in the past and by showing Deputy Parker what Dickerson admitted were the remnants of marijuana cigarettes.

Dickerson's claim that the positioning of the officers created such a show of force that he was prevented from leaving the scene is not supported by the evidence in this case. According to the record, the officers were standing behind Dickerson's car while Dickerson was performing the field sobriety tests. Dickerson implies that the officers followed him as he was returning to his vehicle. The record

5

does not show when the officers moved from the rear of Dickerson's vehicle or where they were standing when Deputy Parker asked Dickerson about his possession and use of marijuana. The mere presence of officers who are uniformed and armed does not constitute a "show of authority" that transforms a consensual encounter into a seizure. United States v. Drayton, 536 U.S. 194, 204 (2002).

When the detention based on the traffic violation and suspicion of an alcohol-related offense terminated, both the police officers and Dickerson understood that Dickerson was free to leave. Nothing in this record indicates that the officers acted in any manner that threatened Dickerson or that supports a conclusion that he was not free to go. Any further interaction was on a consensual basis until Dickerson's answers to Deputy Parker's inquiries gave rise to a reasonable suspicion regarding possible drug-related criminal activity. Thus, Deputy Parker's questions seeking information did not constitute a seizure in violation of Dickerson's Fourth Amendment rights.

Finally, contrary to Dickerson's assertions, the facts in Reittinger are materially different from the facts here. The defendant in that case, unlike Dickerson, never took any action to leave or indicated, in any way, that he was going to leave, even after being told he was free to go. Neither the

6

defendant nor the police officer had changed position from the initiation of the encounter through the officer's repeated, unanswered questions.  At that point, the defendant, without direction from the police, got out of his vehicle, demonstrating that he did not think he was free to leave. Reittinger, 260 Va. at 234-35, 532 S.E.2d at 26.  Nor would a reasonable person have believed he was free to leave.

For the reasons stated above, the questions posed to Dickerson by Deputy Parker after Dickerson was told he was free to leave were asked in the context of a consensual encounter, and, therefore, Dickerson was not seized in violation of his Fourth Amendment rights.  Accordingly, the trial court did not err in denying Dickerson's motion to suppress the evidence seized from his vehicle, and we will affirm the judgment of the Court of Appeals.

Affirmed.