COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Humphreys and Senior Judge Hodges
Argued at Richmond, Virginia


MATTHEW NORMAND OUELLETTE

                                           MEMORANDUM OPINION[*] BY
v.        Record No. 0776-03-2        JUDGE RUDOLPH BUMGARDNER, III
                                                JULY 20, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Edward L. Hogshire, Judge

Vanessa E. Hicks, Assistant Public Defender, for appellant.

Richard B. Smith, Senior Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.


        The trial court convicted Matthew Normand Ouellette of two counts of possession of a

controlled substance with intent to distribute, bribery, possession of a controlled substance while

possessing a firearm, and possession of marijuana.  He appeals the denial of his motion to

suppress statements and evidence obtained after a traffic stop.  Concluding the encounter was

consensual, we affirm.

        In determining whether the defendant was seized in violation of the Fourth Amendment,

we "give deference to the factual findings of the trial court and . . . determine independently

whether, under the law, the manner in which the evidence was obtained satisfies constitutional

requirements."  McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001).

Detective Lloyd Hill stopped the defendant's vehicle after he ran a stop sign and made an illegal

U-turn.  The detective stopped the defendant in a public place, parked behind him, but did not

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

block in his vehicle.  After asking the defendant for his license and registration, the detective asked him to step back to the detective's car where he explained the reason for the stop.  He then advised the defendant that he was not a traffic officer and was not going to write a ticket.

The detective explained, "What I want to talk to you about . . . is the drug situation."  He told the defendant he "had seen him cruising through some of our drug areas, and some of the weird twists and turns that he had taken because he had gone and stopped in certain places, like made U-turns and things like that, that was just kind of strange."  He asked if the defendant had drugs in the car.  The defendant replied, "No."  The detective then asked if he would consent to a search of the car, and the defendant responded, "I want to say no."

The detective asked the defendant to wait a few minutes and went to speak with the passenger.  He returned a few minutes later and asked if the defendant had any marijuana in the car.  The defendant answered, "No."  The detective next asked, "[I]f I had a dog sniff the car, would the dog hit on it?"  He explained that if the defendant had been smoking in the car a dog would alert to it.  The detective told the defendant that if he had only a small amount of marijuana, he might receive a simple warning, but he added that if it was "a lot . . . like a sellable amount, then sometimes I have to handle that one differently."  The defendant responded, "[T]here might be a small blunt in the car."  When the detective asked if the defendant would mind getting it for him, the defendant went to his car, got a vest, removed a small colored bag, and handed the bag to the detective.  The detective realized the bag contained marijuana, ecstasy, and ketamine (a cat tranquilizer).  He arrested the defendant.

Pursuant to the arrest, the detective searched the defendant's car.  He found a .357 bullet but no weapon.  When he asked if there was a gun, the defendant responded that the gun was at a friend's house.  The detective asked for consent to search the defendant's house.  The defendant

replied, "I don't guess I have a choice." When the detective repeated the request, the defendant consented.

The detective drove the defendant to his house where he advised the defendant of his Miranda rights. He characterized the defendant as "[s]cared . . . but not uncooperative." The defendant asked whether the detective needed a search warrant, but the detective responded that he did not because he had consent. He asked, "I do have permission to search the house, right?" The defendant said, "Yes," shook his head affirmatively, and handed the detective his keys to the apartment. The defendant then accompanied the detective during the search and directed the detective to the gun, to drug paraphernalia, and to a locked firebox in his bedroom closet. The box contained approximately 500 hits of ecstasy, fourteen vials of ketamine, and approximately $5,000 cash.

The defendant conceded the traffic stop was lawful, but argued his continued detention amounted to an illegal seizure. The trial court denied the motion to suppress finding the defendant voluntarily cooperated with the detective.

> I don't have any doubt that Mr. Ouellette is in a bad spot. And you know, the question is, do you say yes and cooperate, or do you say no, and wait for them to get a warrant, and take some other action. But I think in this particular case, there appears to have been a ---- other than the question do I have to, or do I have a choice, or the statement, I don't know that I have a choice, it appears to be an attempt by the Defendant to cooperate with the investigation. I'm not seeing where his will was overborne, or there was some type of corrosive [sic] activity.

The judge concluded:

> [A]bsent any authority it seems to me that this whole process was one, sort of escalating series of events. Discovery of one thing led to the voluntary revelation of another, led to the search of the house, led to the finding of whatever was there. . . . I'm going to have to overrule the motion to suppress.

Additional police questioning is permissible after a lawful traffic stop is completed if the continued encounter is consensual. See Ohio v. Robinette, 519 U.S. 33 (1996). Officers may "pose questions, ask for identification, and request consent to search . . . provided they do not induce cooperation by coercive means." United States v. Drayton, 536 U.S. 194, 201 (2002). The Fourth Amendment "proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation." Florida v. Bostick, 501 U.S. 429, 439 (1991).

"The crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Id. at 437 (citations omitted). "As long as the person to whom questions are put remains free to disregard the questions and walk away," the Fourth Amendment has not been implicated. United States v. Mendenhall, 446 U.S. 544, 554 (1980). The encounter remains consensual "as long as the citizen voluntarily cooperates with the police." United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991).

In Dickerson v. Commonwealth, 266 Va. 14, 581 S.E.2d 195 (2003), a police officer stopped the defendant for a traffic infraction. After conducting field sobriety tests, the officer decided not to place a charge and told the defendant he was free to go. As the defendant started to get into his car, the officer asked if he had anything illegal in it. The defendant said, "No." The officer then asked if he smoked marijuana. The defendant replied that he did but not while driving and volunteered that there were some "roaches in the ashtray." The defendant denied permission to search the car but handed the officer the ashtray containing marijuana cigarette remains.

The Supreme Court concluded a new, consensual encounter followed an initial detention and release. Id. at 18, 581 S.E.2d at 197. The officer asked questions seeking information and did not imply restraint or the need to restrain which caused the defendant to volunteer

- 4 -

incriminating information. The Court stressed the officer told the defendant he was free to go and the defendant had returned to his vehicle and started to get inside.

Harris v. Commonwealth, 266 Va. 28, 581 S.E.2d 206 (2003), also involved a lawful stop followed by questions unrelated to the stop. The officer stopped the defendant at 4:00 a.m. for a broken license plate light. When asked for his license and registration, the defendant produced his social security card. The officer confirmed by radio that the defendant had a valid license and returned the social security card. He did not tell the defendant whether he would place charges, nor did he tell defendant he was free to go. When the officer asked if the defendant had anything illegal in the car, the defendant replied that he did not and consented to a search of the car. The officer removed the defendant and the passenger, patted them down, and searched the vehicle finding stolen property.

The officer conceded he had no reasonable suspicion of criminal activity, but he did not tell the defendant he was free to go or indicate whether he was going to issue him a ticket. The Supreme Court held the continued encounter was not consensual. A reasonable person would not have believed that the traffic stop had terminated and that he was free to leave. The Court stressed that the officer did nothing to indicate to Harris that he was no longer subject to detention for a traffic violation. "[H]e had not been told that he was free to leave or that Officer Davis was not going to charge him with a traffic violation." Id. at 33, 581 S.E.2d at 210.

The essential facts in this case most closely resemble those in Dickerson. While the detective did not return the defendant's license or tell him he was free to go as in Harris, he explicitly informed the defendant that he was not going to issue a traffic summons. The defendant immediately knew the reason for the traffic stop had concluded. The detective then began asking non-coercive questions about drug activity. The questions sought information and

did not imply restraint or the need to restrain. The detective never ordered the defendant to stay or demanded answers to his questions. The defendant was cooperative and was not restrained.

A consensual encounter does not become an unconstitutional seizure by the presence of several armed officers, Drayton, 536 U.S. at 204-05; by the failure to tell the person he is free to go, Robinette, 519 U.S. at 39-40; by the failure to explain that the person is free to disregard further questioning, I.N.S. v. Delgado, 466 U.S. 210, 216 (1984); or by retention of the person's license, United States v. Weaver, 282 F.3d 302, 310 (4th Cir.), cert. denied, 537 U.S. 847 (2002). "'While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.'" 282 F.3d at 309-10 (quoting Delgado, 466 U.S. at 216).

Under these circumstances, we cannot say that a reasonable person would have felt restrained or compelled to answer the officer's questions. The defendant was stopped in a public place. He was not touched, frisked, or restrained in any way. There was no use of force, brandishing of weapons, or blocking of the defendant's car and no intimidation, threat, or command. The defendant was immediately told he would not receive a citation for his traffic violations. The detective asked non-coercive questions regarding drugs in a manner that did not compel cooperation or response. The defendant voluntarily responded to the questions, retrieved the contraband from his car, and gave it to the detective. He voluntarily cooperated with the police.

The defendant also contends he did not freely and voluntarily consent to the search of his car and house. In addition to his claim that the detention was illegal, he emphasizes the detective's reference to a drug dog, the remark that the detective would only give a warning if the defendant had a small amount of marijuana, and the detective's description of the defendant as "scared, maybe, but not uncooperative."

The fact that consent to search was given after mention of a drug dog was a factor to consider, but it did not compel a finding that the consent was coerced. See Bosworth v. Commonwealth, 7 Va. App. 567, 571, 375 S.E.2d 756, 758 (1989) (a suspect's consent to search was not coerced even though it was given after officer stated he could obtain a search warrant if a drug dog alerted to her car). The detective's comment about only giving a warning could not have coerced consent because the defendant had to know he had more than a small amount of marijuana. Further, the detective made clear that the situation would be different if the defendant had more than a small amount of marijuana. The description that the defendant was scared does not compel a finding that his consent was involuntary. See Weaver, 282 F.3d at 311 ("awkwardness alone does not invoke the protections of the Fourth Amendment").

The defendant also contends he was subjected to custodial interrogation before being advised of his Miranda rights. In a search incident to arrest, the detective recovered a bullet in the defendant's car and asked him whether he had a firearm. That question produced no evidence that could be suppressed. The detective also obtained the defendant's address, and asked for consent to search his house. The questions did not seek incriminating responses, and the request for the defendant's address was a routine booking question. The inquiries did not invoke Miranda. Riddick v. Commonwealth, 22 Va. App. 136, 145, 468 S.E.2d 135, 139 (1996). In addition, before final consent to search the house was obtained, the warnings had been given.

The defendant and the detective had a consensual encounter during which the defendant voluntarily consented to the search of his car and his house. Accordingly, we affirm the denial of his motion to suppress.

Affirmed.