COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Beales and Decker
Argued by teleconference

UNPUBLISHED

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.        Record No. 0594-18-3                    CHIEF JUDGE GLEN A. HUFF
                                                  SEPTEMBER 4, 2018

DAVID GLENN LAW


FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
Clyde H. Perdue, Jr., Judge

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellant.

John T. Boitnott (John T. Boitnott, PC, on brief), for appellee.


Pursuant to Code § 19.2-398(A)(2),[1] the Commonwealth of Virginia ("Commonwealth")

appeals a pretrial order issued by the Circuit Court of Franklin County ("trial court") which granted

David Glenn Law's ("appellee") motion to suppress all evidence obtained from a search of his

vehicle on the ground that he was illegally seized before consenting to the search, rendering his

consent involuntary.  On appeal, the Commonwealth claims that the trial court committed reversible

error by granting the motion to suppress, because appellee consented to the search during a

consensual encounter after the conclusion of a legal traffic stop.  For the following reasons, this

Court reverses the trial court's ruling.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Pursuant to Code § 19.2-398, the Court will review the Commonwealth's appeal of the
pretrial suppression order only insofar as it pertains to the felony indictment.

## I. BACKGROUND

When reviewing a trial court's decision to grant a motion to suppress evidence, this Court views the facts in the light most favorable to the prevailing party below and grants all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). So viewed, the evidence is as follows.

On the evening of May 18, 2017, Sergeant J.A. McCarty ("McCarty") was on patrol in Franklin County when he noticed a vehicle with a broken brake light. He initiated a traffic stop[2] and discovered appellee was the driver and sole occupant of the car. In response to McCarty's request for his license and registration, appellee provided a Virginia state identification card and explained that he did not have an operator's license. McCarty took appellee's documents back to his cruiser and performed a standard records check, confirming that appellee's license was suspended. McCarty returned to appellee's car with the documents. Appellee explained that he was on his way home from work, where he was trying to earn enough money to get his license back. McCarty gave him a verbal warning for both the broken brake light and the fact that he was driving without a license. Appellee assured McCarty that he would get the light fixed.

After returning all of appellee's documents McCarty inquired of appellee if he could ask a few more questions. Appellee made no response to McCarty at that point. McCarty then asked if appellee had any illegal drugs or guns in the car. Appellee responded that he did not. McCarty asked if he could search the car for illegal drugs and guns. Appellee nodded, opened the door, stepped out of the car, and stood near the left rear quarter of the car. As McCarty began his search, he informed appellee that if appellee wanted him to stop searching at any point, all he needed to do

---

[2] The record on appeal to this Court was silent and no argument was made at the trial court regarding the position of McCarty's cruiser relative to appellee's vehicle during the traffic stop.

was say so and McCarty would stop searching. Appellee stood to the rear of the vehicle on the driver's side. The search revealed contraband, which appellee moved to suppress prior to trial.

After a hearing on the suppression motion, the trial court held that McCarty had extended the traffic stop without any suspicion regarding the presence of illegal drugs and that the stop became an illegal seizure when McCarty prolonged it to conduct inquiries that were not reasonably related to the original justification for the stop. The trial court found that appellee's "'consent' was tainted by the illegal seizure and thus ineffective to justify the search." After the trial court rejected a motion to reconsider, the Commonwealth filed this appeal.

## II. STANDARD OF REVIEW

When the Commonwealth appeals a trial court's order to suppress evidence, "the evidence must be viewed in the light most favorable to the defendant." Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992). The trial court's findings of fact are binding on appeal unless they are plainly wrong or unsupported by the evidence. McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). This Court reviews *de novo* the question of whether a person was "seized" in violation of the Fourth Amendment. Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003).

## III. ANALYSIS

The Commonwealth's first assignment of error is that the trial court misapplied United States Supreme Court case law to find that appellee was illegally seized when he gave consent to search his car. The second is that because McCarty's actions were made in good faith reliance on appellee's consent and were not flagrant, the exclusionary rule should not apply even if his search was a violation of the Fourth Amendment. Because this Court finds that appellee's consent was valid, it need not address the applicability of the exclusionary rule.

A consensual search typically implicates no Fourth Amendment interest. Florida v. Bostick, 501 U.S. 429, 434 (1991). Fourth Amendment protection, however, applies and the search becomes illegal, if appellee's consent is involuntary or obtained by "'manipulative exploitation' . . . of an earlier unconstitutional . . . seizure." Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d 213, 218 (2005) (quoting Wong Sun v. United States, 371 U.S. 471, 488 (1963)). Accordingly, the crucial question in this case is whether appellee was unlawfully seized by McCarty at the time he consented to the search of his car.

A person has been "seized" by police within the meaning of the Fourth Amendment if, considering the totality of the circumstances, "a reasonable person would believe that he was not free to leave the scene of the encounter." McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 546 (2001) (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)). Not all encounters between citizens and police officers constitute seizures; "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." Mendenhall, 446 U.S. at 552 (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)).

Appellee argues that he was illegally seized because McCarty extended the duration of his traffic stop to conduct an unrelated investigation into possible illegal drug and weapon possession. Under the United States Supreme Court's ruling in Rodriguez v. United States, 135 S. Ct. 1609 (2015), prolonging a traffic stop in order to conduct an unrelated investigation that is not supported by probable cause or articulable reasonable suspicion of illegal conduct, constitutes an illegal seizure which invalidates a subject's consent to search. In the case at bar, the Commonwealth claims that the traffic stop concluded at the point when McCarty returned appellee's documents and issued his verbal warning. The Commonwealth asserts that all interactions between McCarty and appellee from that point on were consensual.

In Rodriguez, the United States Supreme Court pointed out that traffic stops are generally brief, and more analogous to "Terry stops" than to formal arrests. Id. at 1614. Accordingly, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop." Id. Because the purpose of a traffic stop is simply to address whatever infraction the officer noticed, it may last only as long as necessary to accomplish that purpose. Id. An officer may conduct "unrelated checks during an otherwise lawful traffic stop," but only if they do not prolong the stop, unless they have "the reasonable suspicion ordinarily demanded to justify detaining an individual." Id. at 1615.

In its order granting the motion to suppress, the trial court relied on the Rodriguez decision and this Court's application of it in Matthews v. Commonwealth, 65 Va. App. 334, 778 S.E.2d 122 (2015). This reliance is misplaced, however, because the facts in both cases are distinguishable. In each case, a lawful traffic stop was *extended* while the police conducted additional investigations into possible criminal activity unrelated to the stop and for which the police lacked reasonable articulable suspicion.

In Rodriguez, the driver was detained to allow a K-9 unit to conduct a non-consensual "sniff" of the vehicle. 135 S. Ct. at 1613. After completing all tasks related to the traffic stop, including records checks and issuing a warning ticket, the officer involved asked Rodriguez for permission to walk his dog around the vehicle. Id. Rodriguez refused to consent to the search, and the officer ordered him to turn off the ignition and exit the vehicle—a clear detention—while he waited for a backup officer to help execute the drug "sniff" with his dog. Id. Because the officer detained Rodriguez to conduct a non-consensual drug investigation without reasonable suspicion, and that detention and investigation were unrelated to the original justification for the stop, the Supreme Court found the search to be a violation of the Fourth Amendment. Id. at 1616.

In Matthews, this Court applied Rodriguez in the context of another traffic stop, this time where the driver's consent to search was given before the conclusion of the traffic stop. 65 Va. App. at 345-47, 778 S.E.2d at 127-28. After stopping a car with a dangling object on the rearview mirror, the two officers involved asked the driver about his criminal history and whether his tattoos were "prison tattoos." Id. at 345, 778 S.E.2d at 128. While one officer called for a K-9 unit, conducted a records check, and prepared a warning ticket, the other officer engaged the driver in additional conversation and "asked if a K-9 unit would alert on the car." Id. at 340, 778 S.E.2d at 125. During this conversation—*before* the officer returned the driver's documents and issued the warning—the driver gave consent to search his car. Id. at 343, 778 S.E.2d at 127 (emphasis added). The driver later confirmed his consent to search when one of the officers told him "If you're going to let us search, we're not going to bring the dog." Id. This Court determined that the driver remained seized throughout the encounter because a reasonable person in that driver's position would not have felt free to leave. Id. Applying Rodriguez, this Court held that the unrelated discussions and request for a K-9 unit "prolonged the duration of the traffic stop" beyond the time reasonably required to complete the process of issuing a warning ticket, rendering the seizure illegal. Id. at 345, 778 S.E.2d at 128. Accordingly, this Court found that the driver's consent was invalidated by the illegal seizure. Id. at 346, 778 S.E.2d. at 128.

Rodriguez makes it clear that officers may not extend a traffic stop to conduct an unrelated investigation without reasonable suspicion. Matthews holds that consent is invalid if obtained *while a subject was detained* during the traffic stop that was extended beyond the time necessary to complete it. In the instant case, consent for the search was given during a consensual encounter that occurred *after* the traffic stop had been completed.

The United States Supreme Court has held that consensual encounters between police and citizens may include questioning and even requests for consent to search without implicating the

- 6 -

Fourth Amendment "as long as the police do not convey a message that compliance with their requests is required." Bostick, 501 U.S. at 435. In the immediate aftermath of a legal seizure, such as a traffic stop, a subject's consent to search may be considered voluntary, based on an objective evaluation of the totality of the circumstances, even if the subject was not specifically told that he is "free to leave." Ohio v. Robinette, 519 U.S. 33, 39-40 (1996). Appellate courts use a number of factors to distinguish seizures from consensual encounters, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554. These factors are not an exclusive list; a reviewing court must examine the totality of the circumstances surrounding any incident to determine if a reasonable person would feel free to leave. Id. at 554-55.

Applying these principles, the Virginia Supreme Court has found that a consensual interaction between a citizen and the police may begin in the immediate aftermath of a legally justified seizure, such as a traffic stop. Dickerson v. Commonwealth, 266 Va. 14, 18, 581 S.E.2d 195, 198 (2003). The new encounter is consensual if a reasonable person would feel free to leave the scene and go about his business, even if the police ask questions about activity unrelated to the original justification for the stop. Id.

In Dickerson, a police officer stopped a vehicle for speeding and failure to yield the right of way. The officer noted an odor of alcohol coming from the vehicle, and had Dickerson, the driver, perform field sobriety tests. Id. at 16, 581 S.E.2d at 196. After completing the tests, the officer decided not to charge Dickerson and told him he was free to go. Id. Before Dickerson drove away, the officer asked him a series of questions about possible contraband in the car. Id. The ensuing conversation led the officer to develop reasonable suspicion of drug activity which was confirmed by a search of the vehicle. Id. at 18-19, 581 S.E.2d at 198. The Supreme Court rejected

Dickerson's claim that he was illegally seized when the officer began questioning him. Analyzing the totality of the circumstances surrounding the encounter after the officer told Dickerson he would not be charged, the Virginia Supreme Court held that because a reasonable person in Dickerson's position would have felt free to leave, "[t]he events of the original encounter resulting in Dickerson's initial detention and release were complete and the ensuing events constituted a new, and consensual, encounter." Id. at 18, 581 S.E.2d at 197.

A careful review of the circumstances in this case shows that, as in Dickerson, a reasonable person would have felt free to leave after McCarty returned appellee's documents and issued a warning. No evidence was shown to indicate that McCarty, the sole officer on the scene, engaged in aggressive or coercive behavior during his entire interaction with appellee. Cf. Reittinger v. Commonwealth, 260 Va. 232, 532 S.E.2d 25 (2000) (finding a seizure when defendant was subjected to repeated requests for consent to search his vehicle, from multiple officers, even after he had been told he was free to leave). Moreover, Sergeant McCarty reinforced the consensual nature of the search by advising appellee that the search would be terminated whenever appellee instructed. Appellee never asked McCarty to stop his search. Consensual encounters "remain consensual 'as long as the citizen voluntarily cooperates with the police.'" Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)).

Considering the totality of the circumstances described in the record, this Court concludes that a reasonable person would have felt free to leave at any point after appellee's documents were returned and the warning issued. Accordingly, appellee was not seized when he gave consent to search his vehicle. The encounter at issue was consensual, and appellee's consent was not tainted by an illegal seizure.

IV.  CONCLUSION

The Virginia Supreme Court's holding that a consensual encounter can begin after the conclusion of a legal traffic stop is instructive in this case.  Appellee's reliance on <u>Rodriguez</u> and <u>Matthews</u> both in the suppression hearing and before this Court is misplaced, and the trial court erred in its application of <u>Rodriquez</u> and <u>Matthews</u>.  McCarty did not extend the duration of the traffic stop with any unrelated inquiries or activities, nor did he ask for consent to search appellee's car while appellee was still detained for the traffic stop.  After McCarty returned appellee's documents and issued his warnings, the events of appellee's original detention were concluded and a reasonable person in appellee's position would have felt free to leave.  As a result, the subsequent discussion was a new, consensual encounter.  It was during this consensual encounter that appellee gave consent to search his car, and that consent to search was not tainted by any illegal seizure.  The trial court's order granting the motion to suppress is reversed, and this case is remanded for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>